TROWER BROS. CO. v. HANSON et al.

(Circuit Court, W. D. Missouri, W. D.   May 20, 1901.)

No. 2,516.

**1. COLLATERAL SECURITY—EXPENSES IN ENFORCING.**

As against the indorsers of a note primarily liable therefor, the payee, holding a chattel mortgage as collateral, having instituted suit for and recovered part of the mortgaged cattle sold by the mortgagor, is entitled to credit for expenses of the recovery; but he is not entitled to credit for the expenses of another and unsuccessful suit against other parties for part of such cattle, nor for expenses of sending a man to the mortgagor's premises to see that the security was intact.

**2. SAME—JUDGMENT.**

The payee of a note is entitled to judgment for the full amount thereof against the indorsers thereof, notwithstanding he has a chattel mortgage on cattle as collateral security, and on instituting replevin therefor, and giving a bond, has obtained possession thereof, the final judgment being against him for the value of the cattle; and this though he has appealed from the judgment, though, if he succeeds on the appeal, they will have a claim against him.

Alden, McFadden & Alden and Lathrop, Morrow, Fox & Moore, for plaintiff.

Cook & Gossett, for defendants.

PHILLIPS, District Judge. The court will briefly state the grounds of its conclusions on the facts of this case. The chattel mortgage was collateral security for the payment of the note sued on. The defendants were primarily liable on the note, and the plaintiff had the right, upon the maturity of the note, to have brought suit thereon directly against the defendants for the whole sum of the note. The pursuit of the property under the chattel mortgage was entirely optional with the plaintiff as the mortgagee. In pursuing the property under the mortgage, while doubtless acting for the preservation of a greater security than the personal liability of the makers or indorsers of the note, it was in the interest of the indorsers that the mortgaged property should be recovered by the mortgagee, as the proceeds thereof would inure to the benefit and protection of the indorsers. And while it may be said that the pursuit of the cattle under the mortgage by the mortgagee was optional, and at its own instance, yet it stands both to reason and authority that, if the makers of the note would avail themselves of the fruit of the mortgagee's pursuit of the mortgaged property, they could only claim the net proceeds after the deduction of the necessary and reasonable expenses of the recovery and sale. Laughlin v. Barnes, 76 Mo. App. 258. Accordingly, the court has credited the amount recovered in the pursuit of the cattle to Illinois, deducting the expense of that pursuit, including attorney's fees and traveling expenses of the plaintiff and his attorneys, and the expense of obtaining testimony and the like. The court excludes as a proper reduction from the amount of money realized by the plaintiff on the sale of the 29 head of cattle the item of $11.75, expense of Trowbridge, which was incurred voluntarily by the plaintiff in sending this man down to the farm where the cattle were kept by the mortgagor to look after the security. That was nothing more than a voluntary act on the part of the mortgagee in seeing that its security was intact, which could not be the basis of a charge against the mortgagor. The court also excludes as a credit to the plaintiff the item of $50 advanced by a member of the plaintiff's firm to the defendant Kerr while in St. Louis. Under the evidence, that was nothing more than a loan of $50 by the plaintiff to Kerr in his individual capacity. It could not be regarded as a partnership transaction, nor an expense necessarily incurred in the pursuit of the cattle.

In respect of the transaction in pursuing the 67 head of cattle to Nodaway county, Mo., and the replevin suit instituted therefor, a different question is presented. As already stated, it was entirely op-

tional with the plaintiff whether or not it would pursue the mortgaged property, or rely upon the personal security on the note. Electing to pursue the cattle as an additional security, it took the chances of any recovery therein. If it recovered anything in that litigation, it would have inured to the benefit of the indorsers on the note; and, if they had sought to avail themselves of the fruit of the plaintiff's pursuit, justice would demand that they must bear the burden of the necessary expenses incurred therewith; and, on the other hand, if the plaintiff failed, by its voluntary pursuit and litigation, to yield any fruit for the benefit of the indorsers, it ought not to be allowed to charge up against the indorsers the expense of the fruitless expedition. The position of plaintiff's counsel in respect of this litigation in Nodaway county is not a consistent one. While insisting that they should not be charged up as a payment on the note with the $1,120.91 realized on the sale of the 67 head of cattle after possession taken in the action of replevin, on the ground that in point of fact and law it is not yet a permanent, realized fund, they yet claim in this suit that they should charge up to the defendants the expenses connected with the pursuit of these cattle and the replevin suit therefor. If this be a correct proposition, it would have resulted that, if the expenses attending that transaction had been, say $1,000, it should have been deducted from the amount realized on the sale of the cattle recovered in Illinois, and the money collected from Muir in St. Louis. The argument advanced in support of this proposition is that the pursuit of the different lots of cattle under the mortgage should be regarded as a unit. This, to my mind, is not tenable, as it is not justice. The court has already allowed the plaintiff all the expenses incident to the pursuit of the cattle to St. Louis and the discovery of their whereabouts. The lot of cattle, under the mortgage, was segregated by the mortgagor. Twenty-nine head were sold to the party in Illinois, and 67 head were sold to the party in Nodaway county, Mo. These were separate transactions between the mortgagor and the two purchasers, and the right to recover depended upon the separable rights of the two purchasers. The suits instituted were entirely independent of each other, and in different jurisdictions, and, as the sequel proved, depended upon different evidence and different defenses. In determining to enter upon the litigation respecting the 67 head of cattle in Nodaway county, the plaintiff acted at its own peril as to the results. On the other hand, the position of defendants' counsel is, to my mind, equally untenable. While claiming that the defendants should have credit for the sum of $1,120.91, realized on the sale of the 67 head of cattle, after possession taken under the delivery order of the court in the replevin suit, they insist that they should not be charged with the necessary and reasonable expenses incident to this caption. As already stated, the defendants could not gather the fruit without its thorns.

The position of defendants' counsel in respect of the insistence that the note should be credited with said $1,120.91 is that it was received as a conditional credit upon the note, and that plaintiff cannot recover the balance on the note until the condition has fully matured upon which the credit was made. In the first place, this sum of $1,120.91

was not placed as a credit upon the note, but, as a matter of book-keeping on the part of the plaintiff, in order to preserve the items of collections and expenditures connected with the transactions between the plaintiff and defendants, it entered upon its books the amount realized on the sale of the 67 head of cattle, and then, as a result of that litigation, in which the defendant therein recovered against it the value of the cattle, amounting to $1,400.80, it charged back that sum to the defendants. The defendants cannot accept the credit side of this system of accounting on the books and at the same time reject the debit side. If, in this suit on the note, the defendants should receive a credit for $1,120.91, what would be the attitude of the plaintiff in the event the judgment of the circuit court of Nodaway county should be affirmed by the supreme court? The plaintiff would then have to account to the defendants in the replevin suit for $1,400.80, with interest thereon, so that it would be loser in the transaction by about $300, in addition to the costs and expenses, for which it would have no recourse upon the defendants, unless based upon some independent obligatory contract.

In considering the effect of the value of the property taken into possession by the plaintiff in the replevin suit, it must be looked at in the light of the character of the proceeding. In the action of replevin under the state statute, on executing the proper bond, by the plaintiff, the clerk of the court issues what is called a "delivery order," which authorizes the sheriff to take possession of the specific personal property sued for, and turn the same over to the plaintiff. The obligation of the bond given by the plaintiff is for the forthcoming of the property to abide the result of the litigation. If the plaintiff, at the conclusion of the litigation, has the property in kind, and the defendant prevails in the suit, he has his election to take the property, with the damages resulting from the taking and detention thereof by the plaintiff; or he may elect to take the value thereof as found by the trial court; or, if the plaintiff has not the property on hand at the time of judgment, the defendant is entitled, of course, to a judgment for the value thereof against the plaintiff and his sureties in the replevin bond. So that the possession of the cattle, or the proceeds thereof, by the plaintiff, were all the time subject to the contingency of the result of that litigation; and until the rights of the parties therein are determined by the adjudication it cannot be said that the plaintiff had collected anything on the mortgage in respect of these cattle. The plaintiff merely holds the proceeds of the sale of the cattle for its protection, pro tanto, against the amount of the judgment rendered against it in favor of the defendant in the replevin suit. In principle this ruling is little different from that established in Howell County v. Wheeler, 108 Mo. 294, 18 S. W. 1080, in which it was held that a levy on land, even when consummated by a sale thereunder, amounts to nothing unless the proceeds therefrom are realized to the benefit of the judgment creditor. Until the fruit of the litigation is realized, the matter "remains in fieri, and no satisfaction of the debt to the amount has occurred." In answer to this it is suggested by counsel for defendants in the form of a query: "What would be the attitude of the parties in the event the supreme

court should reverse the judgment of the state circuit court, and the plaintiff should ultimately prevail in that litigation?" It is said the plaintiff would then have the sum of $1,120.91, less expenses incurred in the litigation, in its possession, in addition to its recovery on this note. The plaintiff, at the hearing, in answer to this suggestion, proposed to give to the defendants an indemnifying bond to account for the proceeds of such recovery to the defendants, or to enter into any other like arrangement. But, as this is simply an action at law for the recovery on the note, the court does not feel authorized to enter such stipulation or condition in the judgment herein rendered. The judgment must be one way or the other, unless by consent. But I take it that, if the defendants should satisfy the judgment rendered against them herein, they would be clearly entitled to be subrogated to the rights of the plaintiff in the replevin suit; or that they would have a clear right of action against the plaintiff as for money had and received to their use in the event the plaintiff there ultimately prevailed in the replevin suit. Why could they not, in such state of the case, intervene in that action after a reversal of the case by the supreme court, and have the proceeds of the cattle awarded to the plaintiff adjudged to them, as also any damages which the plaintiff would be entitled to recover for the wrongful taking and detention of the cattle? Most certainly the law would not permit that the plaintiff should recover from the defendants the amount of the note, and at the same time obtain the proceeds of the mortgaged property which inured to the benefit of both the maker and the indorsers of the note. I have not taken into account any consideration of the contract of indemnity mentioned in paragraph 8 of the special findings, for the reason that it is an independent subsequent contract, not pleaded or counted on by either party. It was introduced in evidence by plaintiff solely on the issue tendered by the answer respecting the authority to indorse the note as a partnership transaction, and to show its recognition by both of the partners. When it becomes the subject of a separate suit between the parties thereto, its effect and compass can be determined. Possibly, in an action thereon, an accounting might properly be had respecting any fund realized by plaintiff in the Nodaway county replevin suit. While the peculiar situation of the case is not free from embarrassment, the conclusion reached by the court seems to be reasonable and inevitable under the pleadings.